MONTGOMERY GMC TRUCKS, INC.,
Plaintiff-Respondent,

v.

Johnny NUNN, Defendant-Appellant.

No. 12434.

Missouri Court of Appeals,
Southern District,
Division Four.

Aug. 3, 1983.

Motion for Rehearing or to Transfer
Denied on Aug. 25, 1983.

Application to Transfer Denied
Oct. 18, 1983.

Robert W. Evenson, Evenson & Carlin, Pineville, R.J. Gordon, Anderson, for defendant-appellant.

Theodore L. Johnson, III, John W. Housley, Lowther, Johnson, Lowther, Cully & Housley, Springfield, for plaintiff-respondent.

CRIST, Special Judge.

Respondent (truck dealer) sued appellant (buyer) for conversion arising from buyer's removal of his truck from truck dealer's possession while the truck was subject to a mechanic's lien for repairs made by truck dealer. See § 430.020 RSMo 1978. Buyer counterclaimed for damages alleging abuse of process and malicious prosecution.

The trial court granted truck dealer's pretrial motion for summary judgment on the issue of buyer's liability for the conversion. The Greene County jury subsequently determined truck dealer's damages to be $1,800. On buyer's counterclaim, the jury awarded $15,000 actual and $10,000 punitive damages for abuse of process and $1,800 actual and $15,000 punitive damages for malicious prosecution. The trial court sustained truck dealer's motion for judgment notwithstanding the verdict as to the verdicts rendered on buyer's counterclaims. Buyer appeals. We affirm.

Buyer came to truck dealer's salesman with a need for a larger truck in his interstate business of buying, curing and selling lumber. On February 6, 1979, buyer agreed to purchase truck dealer's truck-trailer unit. After trade-in, buyer executed two security agreements, one for the 1975 truck in the amount of $26,633 payable in 30 monthly installments of $709.80, and one for the 1979 trailer in the amount of $15,266.24 payable in 36 monthly installments of $364.34. Truck dealer assigned these agreements with recourse.

Salesman claimed the truck was in top A–1 condition and told buyer truck dealer would fix everything wrong with the truck prior to sale. Salesman, with management's approval, extended a 90 day warranty to buyer where, if anything went wrong with the truck, truck dealer would fix it with the parties sharing the cost equally. Truck dealer kept the truck a week prior to sale to check it out.

In the 9 weeks prior to April 9, 1979, buyer brought the truck back to the truck dealer's repair shop approximately every 1 to 2 weeks for repairs totalling $3,393.53. On April 9, 1979, buyer brought the truck into truck dealer's repair shop with various complaints. During the course of inspection, the engine was discovered to have one burnt piston and the rings on two cylinders were broken. Buyer was told these repairs would cost $3,000 to $3,600 with buyer having to pay $1,500 to $1,800 under the special 90 day warranty. Buyer did not have that much money so truck dealer agreed to work something out whereby buyer could make installment payments while having his truck back on the road.

The repairs were expected to take a week but truck dealer discovered the engine's block was cracked and the power steering box and pump, super charger and piston liners were all in need of replacement. Truck dealer completed these repairs and had the truck ready for delivery to buyer on May 1, 1979, along with a bill for $4,500 as buyer's one-half of the repair costs.

Truck dealer refused to let buyer take possession of the truck unless buyer paid $1,000 down with the balance payable in installments secured by the truck. Truck dealer was aware that substantially all of buyer's assets were tied up in the truck and the truck and trailer were used by buyer to earn a living.

On May 2, 1979, buyer asked to road test the truck before obligating himself to payment. Truck dealer's mechanic went with buyer. Buyer drove to a truck stop where his wife was waiting and ordered the mechanic from the truck. Buyer offered to have his wife return mechanic to the truck dealer but mechanic objected. Buyer then

assumed possession of the truck and left mechanic.

Later that day buyer visited his attorney who tendered a check for $100 on behalf of buyer to truck dealer, setting out buyer's position in a letter. Buyer proceeded to use the truck in his business.

On the same day, truck dealer filed a criminal complaint with the prosecutor and a felony warrant was issued for buyer's arrest. Buyer voluntarily appeared for arraignment for the stealing charge on May 21, 1979. On May 23, 1979, truck dealer filed a petition on account and for conversion, swore out an affidavit and caused buyer's truck and trailer to be attached.

Buyer contends truck dealer used the writ of attachment to attach the truck and trailer for the improper purpose of mentally and financially draining buyer, having as an ulterior motive the coercing of buyer to pay a false and inflated bill. Buyer claims this amounted to the tort of abuse of process and truck dealer should be liable for damages.

Buyer is entitled to have the evidence viewed in a light most favorable to him. *Bayne v. Jenkins,* 593 S.W.2d 519, 521 (Mo. banc 1980). The elements of, and required proof for, abuse of process are best set out in *Wessler v. Wessler,* 610 S.W.2d 650, 651–52 (Mo.App.1980). Also, see *Boyer v. Carondelet Savings & Loan Assoc.,* 633 S.W.2d 98, 101 (Mo.App.1982) and *Brown v. Mullarkey,* 632 S.W.2d 507, 510 (Mo.App.1982).

■ Abuse of process is committed "when the actor employs legal process in a manner technically correct, but for a wrongful and malicious purpose to attain an unjustifiable end or an object which it was not the purpose of the particular process employed to effect." F. Harper & F. James, *The Law of Torts,* § 4.9, p. 330 (1956). A case is made where the misuse of process becomes a form of extortion wherein a person attempts to gain an advance collateral to the purpose of the process used. *See White v. Scarritt,* 341 Mo. 1004, 111 S.W.2d 18 (1937).

■ In the present case, buyer claims the writ of attachment was used to extort from him payment of an inflated repair bill. We find no such extortion present because truck dealer did nothing more than pursue his claim for the repair bill to its authorized conclusion with the writ of attachment. Buyer does not dispute the fact that some money was owed to truck dealer. Regardless of how evil truck dealer's motive may have been, the evidence shows truck dealer merely used legal process to attempt to collect an unpaid account secured by a lien on buyer's truck. Since the end sought was not unjustifiable or unlawful there can be no recovery for abuse of process.

■ Buyer next asserts the evidence supports the jury's verdict for malicious prosecution. The elements that must be proved to succeed in such an action are: (1) a prosecution; (2) caused by the defendant; (3) lacking probable cause; (4) terminated in favor of plaintiff; (5) defendant's malice in instituting the prosecution; and (6) damage to the plaintiff. *Hamilton v. Krey Packing Co.,* 602 S.W.2d 879, 881 (Mo.App. 1980). In the present case, buyer's counterclaim for malicious prosecution fails because truck dealer possessed probable cause to complain to the prosecutor.

■ Upon learning of buyer's commandeering of the truck while on the test drive, truck dealer filed a criminal complaint with the prosecutor. Buyer was afforded a preliminary hearing and bound over to the circuit court for further proceedings. The binding over was prima facie evidence of probable cause. *Huffstutler v. Coates,* 335 S.W.2d 70, 75–76 (Mo.1960). The prima facie showing of probable cause stands conclusive unless rebutted by evidence that false testimony formed the basis of the charge and the falsity was reasonably discoverable. *Moad v. Pioneer Finance Co.,* 496 S.W.2d 794, 799 (Mo.1973). Buyer produced no evidence of false testimony given at the preliminary hearing.

■ Buyer delivered the truck to truck dealer for repairs. From April 9 to May 2, 1979, truck dealer made those repairs. Al-

though the amount of the bill was in dispute, there was no dispute buyer owed something. Further, buyer does not dispute truck dealer's statutory mechanic's lien on the truck when buyer, without tender of payment, illegally took possession of it. The filing of the criminal complaint and the suit for conversion coupled with a writ of attachment were legal methods used to obtain a legitimate end—payment for repairs made.

Judgment affirmed.

FLANIGAN, P.J., and REINHARD and CRANDALL, Special Judges, concur.