James L. WILLIAMS, Appellee,

v.

RYDER/P.I.E. NATIONWIDE, INC., Appellant.

No. 85–1106.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 18, 1985.

Decided March 19, 1986.

Rehearing Denied April 8, 1986.

Peter Reed Corbin, Jacksonville, Fla., for appellant.

Anthony J. Coultas, St. Louis, Mo., for appellee.

Before ROSS and BOWMAN Circuit Judges, BRIGHT, Senior Circuit Judge.

BOWMAN, Circuit Judge.

Ryder/P.I.E. Nationwide, Inc. (Ryder) appeals a jury verdict awarding James L. Williams $71,000 in actual damages and $300,000 in punitive damages on his claim for malicious prosecution. We reverse.

## I.

This action stems from the theft of five RCA video cassette recorders (VCRs) from one of Ryder's trailers in St. Louis in November 1981. Most of the facts are undisputed. Williams was Ryder's operations manager at its St. Louis terminal when the theft occurred. The terminal manager at that time was John Rodgers. Both parties agree that Williams and Rodgers were not on friendly terms and that Rodgers once had fired Williams only to have upper-level Ryder management overturn his decision.

On November 2, 1981, Williams instructed a Ryder driver, Charles Caldwell, to take one of Ryder's trailers to a repair shop, drop it on the lot, and return. In moving the trailer, Caldwell noticed it was heavy and opened the back of the trailer to inspect its contents. Caldwell saw about one-half a trailer of dinette sets and five VCRs. Caldwell told Williams about the freight and Williams responded that he knew freight was on the trailer and directed Caldwell to deliver the trailer to the repair shop anyway. The only essential fact in dispute is whether Caldwell told Williams specifically about the VCRs. Williams denies that Caldwell mentioned the VCRs while the police report and other second-hand accounts of what Caldwell claimed he told Williams (Caldwell did not testify at trial) indicate that Caldwell told Williams about the VCRs. On his way to the repair shop, Caldwell wrote down the serial numbers of the VCRs and then delivered the trailer as instructed. Several hours later, Caldwell was dispatched to pick up the trailer. On his way back, Caldwell stopped, inspected the contents of the trailer, and noted that the VCRs were missing.

Caldwell told a friend who also was working at Ryder of the incident. Two days later, on November 4, the friend reported the incident to Rodgers, who met with Caldwell that same afternoon. The next day, Rodgers called Ryder's headquarters in Jacksonville, Florida and was advised to contact the Federal Bureau of Investigation (FBI). Rodgers did so, but the FBI refused to handle the case because the theft involved freight worth less than $10,000. Rodgers then reported the theft to the St. Louis Police Department. The officer assigned to the case, Richard Sisco, visited the terminal the following morning. In the interim, Rodgers tried to find the dispatch sheet for Caldwell's trip and the freight bill on the VCRs. Both were missing.

On November 6, Officer Sisco and another police officer visited the Ryder terminal and interviewed Rodgers. The officers proceeded to interview Caldwell and other employees at Ryder's St. Louis terminal, as well as the owner of the repair shop at which Caldwell had left the trailer. Sisco did not interview Williams before complet-

ing the investigation because he was unable to reach Williams either by phone or in person.

Concurrently with the police investigation, Ryder conducted its own internal review of the incident. The final internal report concluded there was not sufficient evidence to accuse anyone of the theft. Rodgers claims he did not read the final report until approximately five months after the theft occurred. On November 10, Rodgers fired Williams for negligent performance of his managerial duties.

After completing his investigation, Officer Sisco presented the case to the Circuit Attorney's office, and specifically to Assistant Circuit Attorney Thomas Daly. Sisco asked Rodgers to accompany him to the Circuit Attorney's office. Based on the police report and his discussions with Sisco and Rodgers, Daly prepared a sworn complaint against Williams charging him with stealing goods worth over $150.00. The circuit judge independently decided that probable cause existed and issued a warrant to arrest Williams. On December 2, Williams turned himself in to the St. Louis Police Department and was arrested. The charges against Williams were ultimately dismissed when the grand jury failed to return an indictment. No one was ever convicted of the theft and the VCRs were never recovered.

Williams initiated this action against Ryder in state court claiming false arrest. Ryder removed the action to federal court and moved to dismiss on the ground that the applicable Missouri statute of limitations barred the claim. Williams countered that the complaint stated a claim for malicious prosecution, which is subject to a different statute of limitations. The District Court dismissed the false arrest claim, but granted Williams leave to amend his complaint to state a claim for malicious prosecution. At the subsequent trial, the jury returned a verdict for Williams, awarding him actual and punitive damages. The District Court entered judgment on the verdict and Ryder appeals.

Ryder asserts eleven bases for either reversing the jury's verdict or remanding for a new trial. Because our resolution of the issue of probable cause requires reversal, we do not reach Ryder's other arguments.

## II.

Ryder argues that the District Court should have granted its motion for a directed verdict or for judgment notwithstanding the verdict because Williams failed to establish all the elements required in a malicious prosecution action. This is a diversity action, and Missouri's substantive law applies. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The Missouri Supreme Court recently delineated the elements that a plaintiff suing on a theory of malicious prosecution must prove: "(1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged." *Sanders v. Daniel International Corp.*, 682 S.W.2d 803, 807 (Mo.1984). Although Ryder asserts that Williams failed to prove lack of probable cause, instigation of the prosecution by Ryder, and the requisite level of malice in light of *Sanders*, we find our resolution of the issue of probable cause dispositive. Some of the other issues that Ryder raises may have merit, but we need not and do not decide them.

We note at the outset that Missouri law does not favor actions for malicious prosecution. *Id.* at 806; *Harper v. St. Joseph Lead Co.*, 233 S.W.2d 835, 838 (Mo.1950); *Zahorsky v. Griffin, Dysart, Taylor, Penner & Lay, P.C.*, 690 S.W.2d 144, 151 (Mo. Ct.App.1985). As a result, the elements necessary to sustain a malicious prosecution claim "must be strictly and clearly proven." *Higgins v. Knickmeyer-Fleer Realty & Investment Co.*, 335 Mo. 1010, 74 S.W.2d 805, 814 (1934); *Sanders*, 682 S.W.2d at 806; *Harper*, 233 S.W.2d at 838.

This disfavor of malicious prosecution actions represents a value choice based on public policy considerations. Sound public policy and the ends of justice require the uncovering of crime and the prosecution of criminals. "A policy that discourages citizens from reporting crime or aiding in prosecution would be undesirable and detrimental to society in general." *Cates v. Eddy*, 669 P.2d 912, 918 (Wyo.1983); *Sanders*, 682 S.W.2d at 806 (quoting *Cates*). For example, "[l]arge tort judgments against well-meaning individuals, acting honestly and in good faith, might seriously inhibit those attempting to perform what they believe a civic duty." *Cates*, 669 P.2d at 917–18; *see Bonzo v. Kroger Grocery & Baking Co.*, 344 Mo. 127, 125 S.W.2d 75, 79 (1939); *Foster v. Chicago, Burlington & Quincy Railroad Co.*, 321 Mo. 1202, 14 S.W.2d 561, 569 (1928).

The standard of appellate review of the District Court's denial of Ryder's motion for a directed verdict and for judgment notwithstanding the verdict is the same under both federal and state law; thus, we avoid having to analyze the likelihood that federal and state law would yield different results, as required by *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 538, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958). In keeping with principles followed in both the federal and the Missouri courts, we consider the evidence in the light most favorable to Williams, assume as true all facts that Williams's evidence tended to prove, and give Williams the benefit of all favorable inferences. We would not overrule the District Court if the evidence were susceptible of any reasonable inference sustaining Williams's position. *See Crues v. KFC Corp.*, 729 F.2d 1145, 1148 (8th Cir.1984).

There is no dispute here as to the Missouri law on probable cause. In a criminal action, the test for probable cause is "whether the facts and circumstances would warrant a belief in an ordinarily cautious person that another had committed a crime." *Dodson v. MFA Insurance Co.*, 509 S.W.2d 461, 467 (Mo.1974). As the Missouri Supreme Court said over fifty years ago, "It is not essential to the existence of probable cause that the evidence or facts upon which the party acted be sufficient to insure a conviction for the question of probable cause 'does not turn upon the actual innocence or guilt of [the] accused but the prosecutor's ... belief in it based upon reasonable grounds.'" *Higgins*, 74 S.W.2d at 813.

To determine whether Williams made a submissible case on the probable cause issue, we must consider the manner in which the criminal charge originated. If a prosecuting attorney originates a charge by information, it "amounts to a prima facie showing that probable cause did exist for the prosecution." *Moad v. Pioneer Finance Co.*, 496 S.W.2d 794, 798 (Mo.1973); *Lipari v. Volume Shoe Corp.*, 664 S.W.2d 953, 957 (Mo.Ct.App.1983). The prima facie showing of probable cause is conclusive unless the plaintiff can rebut it with "evidence that false testimony formed the basis of the charge and the falsity was reasonably discoverable." *Montgomery GMC Trucks, Inc. v. Nunn*, 657 S.W.2d 334, 336 (Mo.Ct.App.1983) (citing *Moad*, 496 S.W.2d at 799). Moreover, no inference of lack of probable cause arises from the later dismissal of the charge. *Moad*, 496 S.W.2d at 799; *Higgins*, 74 S.W.2d at 813.

In the present case, Assistant Circuit Attorney Daly prepared a complaint against Williams which another assistant circuit attorney eventually swore to and signed. In doing so, both attorneys concluded there was probable cause to believe Williams had stolen the five VCRs. Under Missouri law, a complaint which contains a plain, concise, and definite written statement of the facts constituting the offense charged, sworn to and signed by a prosecuting attorney, constitutes an information. *See State ex rel. Martin v. Berrey*, 560 S.W.2d 54, 57 (Mo.Ct.App.1977). Having reviewed the sworn complaint, we conclude that it meets the requirements of *Berrey* and constitutes an information.

Accordingly, in light of *Moad*, *Lipari*, and *Nunn*, the facts of this case establish

a prima facie showing that probable cause existed for the prosecution based on the prosecutor's information (here denoted as a sworn complaint). Moreover, a circuit judge reviewed the complaint and independently determined that probable cause existed to charge and arrest Williams. Although this prima facie showing of probable cause is rebuttable, the burden was on Williams to show that the criminal charge was predicated upon false testimony, the falsity of which was reasonably discoverable. *See Montgomery GMC Trucks,* 657 S.W.2d at 336. Williams totally failed to meet that burden.

Williams made no showing that anything Rodgers told the investigating officers was false. The key evidence that Williams asserts is false is Caldwell's statement that he told Williams that five VCRs were in the trailer. Williams asserted at trial that Caldwell had not told him about the VCRs, but he failed to produce any evidence— such as Caldwell's testimony—to refute Officer Sisco's and terminal manager Rodgers's statements that Caldwell told each of them that he had informed Williams about the VCRs. And even if Caldwell's statements to Rodgers and Officer Sisco could be shown to be false—a showing that Williams did not make—Williams's case still falls short because he offered no proof that the falsity was reasonably discoverable.

Based upon our review of the record, we hold as a matter of law that Williams did not make a submissible case on the probable cause issue. Because proof of lack of probable cause was an essential element of Williams's case, the District Court erred in denying Ryder's motion for a directed verdict as well as its motion for judgment notwithstanding the verdict, and the judgment entered below in Williams's favor must be reversed.

BRIGHT, Senior Circuit Judge, dissenting.

I respectfully dissent.

The majority today holds that James L. Williams failed to make a submissible case on the lack of probable cause for his prose-

cution, an essential element of his malicious prosecution claim. Therefore, the majority rules that the district court erred in denying Ryder/P.I.E. Nationwide, Inc.'s motion for a directed verdict as well as its motion for judgment notwithstanding the verdict, and reverses the judgment entered below in Williams' favor. I disagree.

In reviewing the decision of a district court upon a motion for a directed verdict or a motion for a judgment notwithstanding the verdict, we use the same standard applied by that court in determining the issue. That is, we must determine whether or not the evidence was sufficient to create a submissible case for the jury. *Horn v. Ray E. Friedman & Co.,* 776 F.2d 777, 779 (8th Cir.1985).

A directed verdict or a judgment notwithstanding the verdict should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party. Furthermore, we must consider the evidence in the light most favorable to the non-moving party, assume as true all facts supporting the non-moving party which the evidence tends to prove, and give the non-moving party the benefit of all reasonable inferences. *See Thomure v. Truck Insurance Exchange,* 781 F.2d 141, 142 (8th Cir. 1986) (per curiam); *Craft v. Metromedia, Inc.,* 766 F.2d 1205, 1218 (8th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *SCNO Barge Lines, Inc. v. Anderson Clayton & Co.,* 745 F.2d 1188, 1192–93 (8th Cir.1984); *Crues v. KFC Corp.,* 729 F.2d 1145, 1148 (8th Cir.1984).

After examining the evidence presented in this case under the above standards, I believe that Williams made a submissible case on his malicious prosecution claim. Therefore, the district court did not err when it denied Ryder's motion for a directed verdict and its motion for a judgment notwithstanding the verdict.

Ryder is entitled, however, to a new trial in view of the intervening change in Missouri law as expressed in *Sanders v. Dan-*

*iel International Corp.*, 682 S.W.2d 803 (Mo.1984) (en banc). In *Sanders,* the Missouri Supreme Court focused on the type of malice necessary to establish liability in a malicious prosecution action. The court rejected the "malice in law" standard, which had been used in Missouri, and instead adopted a legal malice standard.[1] In the process, the court specifically disapproved of the use of Missouri Approved Instruction No. 16.01 and No. 23.07, and held that the giving of these instructions entitled the defendant to a new trial. *Id.* at 814.

In the present case, the district court, without the benefit of *Sanders,* used both Missouri Approved Instruction No. 16.01 and No. 23.07. "An appellate court must apply the law in effect at the time it renders its decision, unless to do so would result in manifest injustice * * *." *Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Flanigan v. Burlington Northern, Inc.,* 632 F.2d 880, 889 (8th Cir.1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981). Therefore, in light of *Sanders,* I believe that Ryder is entitled to a new trial.[2]

---

1. The Missouri Supreme Court noted that:

   In general, the law recognizes three degrees of malice. First, there is malice in its universal sense as understood in the popular mind, which means "ill will, spite, personal hatred, or vindictive motives." * * * This type of malice is commonly referred to as "malice in fact" or "actual malice."

   A second degree of malice is malice in its legal sense. The definition of legal malice has a broader meaning than the popularly understood definition of malice in fact. Malice in its enlarged legal sense embraces any improper or wrongful motive—that is, *malo animo.* * * * *

   Third, there is "malice in law." This degree of malice is properly defined as a wrongful act done intentionally without just cause or excuse. *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d at 807–08 (citations omitted).

2. Williams contends that the district court's use of Missouri Approved Instruction No. 16.01 and No. 23.07 was not prejudicial. This argument lacks merit.