John E. MOAD, Appellant,

v.

PIONEER FINANCE COMPANY, a corporation, et al., Respondents.

No. 56933.

Supreme Court of Missouri, Division No. 1.

July 16, 1973.

Wayne C. Smith, Jr., Smith, Askinosie & Fiorella, Springfield, for appellant.

Reed O. Gentry and Gene C. Morris, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for respondents.

HIGGINS, Commissioner.

Appeal (taken prior to January 1, 1972) from judgment in favor of defendants entered pursuant to a directed verdict at the close of plaintiff's case in his action for $75,800 actual and $200,000 punitive damages for alleged malicious prosecution of plaintiff by defendants.

Plaintiff alleged: that in 1962 Kaw Finance Company, with offices in Kansas City, Missouri, organized Kaw Finance Company of Springfield, Inc., as a wholly owned subsidiary; that the names of all former Kaw Finance companies were later changed to Pioneer Finance Company of Springfield, Inc.; that all such corporations are the alter ego of Pioneer Finance Company; that defendant Sullivan is an officer of all such corporations; that on July 31, 1963, defendants caused an inquiry to be instituted by the Prosecuting Attorney of Webster County, Missouri, and wilfully, feloniously, maliciously, and without probable cause instituted a prosecution by complaint in the Magistrate Court of Webster County and prosecuted plaintiff thereunder; that the complaint was called for preliminary hearing and, upon

motion of plaintiff, was dismissed by the court; that plaintiff was damaged. A copy of the felony complaint was attached to the petition as Exhibit A:

## FELONY COMPLAINT

STATE OF MISSOURI

vs.

JOHN E. MOAD,
            Defendant

IN THE MAGISTRATE COURT
OF WEBSTER COUNTY
MISSOURI
      #  10646

STATE OF MISSOURI ⎱ SS.
COUNTY OF WEBSTER ⎰

Before the undersigned, an officer authorized to administer oaths, personally appeared David N. Lawson, Prosecuting Attorney, who being duly sworn according to law, makes oath and states that on the 15th day of November, 1962, in the County of Webster and State of Missouri, John E. Moad, did then and there wilfully, unlawfully and feloniously and knowingly make a false statement in writing with intent that the said false statement should be relied upon, respecting the financial condition of Marvin Hainline and Maude Hainline, for the purpose of procuring a loan for Marvin Hainline and Maude Hainline, in that the defendant herein did make a false statement, to-wit: a furniture record which purports to be a listing of the furniture owned by Marvin Hainline and Maude Hainline on the 15th day of November, 1962, but in truth and in fact a great majority of the said furniture and personal property listed in the furniture record did not exist, and the statement was false. All of which the defendant will knew at the time of making the said furniture record for the benefit of Marvin Hainline and Maude Hainline, and thereafter a loan was made to the said Marvin Hainline and Maude Hainline in the total amount of $1034.12, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Missouri.

(Signed)   David N. Lawson
_____
David N. Lawson, Prosecuting Attorney

STATE OF MISSOURI ⎱ SS.
COUNTY OF WEBSTER ⎰

Comes now, David N. Lawson, Prosecuting Attorney, in and for Webster County, Missouri, and first being duly sworn and upon his official oath states that the foregoing facts are true and correct according to his best information and belief.

(Signed)   David N. Lawson
_____
David N. Lawson, Prosecuting Attorney

Subscribed and sworn to before me this 31st day of July 1963.

(Signed)   Marion Corbett
_____
Clerk of the Magistrate Court

Defendants jointly and separately denied all allegations of the petition, asserted that it failed to state a cause of action or claim upon which relief could be granted, and alleged affirmatively reasonable grounds or probable cause for the prosecution.

William Donald Sullivan, President of Pioneer Finance Company, related the name changes and the relationship of the various finance companies as alleged in plaintiff's petition, and Pioneer's and Mr. Sullivan's net worth. He was acquainted with plaintiff John Moad and knew that he once worked for one of the Kaw companies in Kansas City, left Kansas City and went to work in California, was contacted by Pierce Johnson of Kaw Finance Company of Springfield, Inc., and returned from California in 1961 to manage the Springfield Company. Mr. Moad resigned his Springfield employment in 1963, and Mr. Sullivan went to Springfield to operate the company until another manager could be found. About a month after his arrival in Springfield Mr. Sullivan became dissatisfied with the condition of some accounts and hired Mr. Ben Martin, an attorney, to investigate all such delinquent loans and accounts that were not up to date. One of these loans was that made to Marvin and Maude Hainline. Mr. Sullivan did not tell Mr. Martin how to conduct his investigations, but he was to present information concerning such loans to the bonding companies which had written employee fidelity bonds. Mr. Sullivan felt the books and records of the Springfield office needed investigation for purposes of filing, if appropriate, a claim or claims of fidelity loss. He had no knowledge of the charges against John Moad in connection with the Hainline loan until so told by Mr. Martin subsequent to its filing by Mr. Lawson. Mr. Moad was arrested in Kansas City on a warrant issued by the Magistrate Court of Webster County. On that occasion Mr. Sullivan talked with Mr. Martin and Tiny Owen, Sheriff of Webster County, who was with Mr. Martin. Mr. Martin rode back to Webster County with Mr. Moad and the sheriff. A bond claim based upon Mr. Martin's investigation was ultimately paid and Mr. Martin's employment was then terminated.

Pierce Johnson described the procedures required of Pioneer employees in making loans and determining, in appropriate cases, the proper security.

John Moad made the Hainline loan on behalf of defendant finance companies in 1962. No payments were made on the loan and he made follow-ups including a call to Mrs. Hainline. He left the defendant companies in March, 1963, and went to work for Interstate Securities, also in Springfield. In May, 1963, he returned to Kansas City and went to work for Jack's Brokerage Service. While still in Springfield, he was called by Ben Martin and went to his office. Also present were Mr. Sullivan and his attorney, Mr. Scott Traylor. Mr. Martin advised that he was investigating for Kaw Finance with respect to some fidelity bond claims. Some statements were shown to Mr. Moad and there was some conversation with respect to prosecution in which Mr. Sullivan indicated he would spend substantial sums to secure prosecution of Mr. Moad. Following his arrest in Kansas City by police officers, he saw Ben Martin and Sheriff Owen at police headquarters. Mr. Martin asked some questions of him and they left for Marshfield where they went to the office of the prosecuting attorney and then to jail. Mr. Martin visited with him further before he was taken to court to post bond.

Ben Martin was employed by Kaw Finance Company in 1963 to make investigations for surety bond claims with respect to Mr. Moad. He was not told by his employer, Mr. Sullivan, how to make his investigations. He reported periodically to Mr. Sullivan. In the process of his investigation of the Hainline loan he talked to Mr. Jack Yocom, Assistant Prosecuting Attorney of Greene County, and learned that venue of and prosecution in connec-

tion with the Hainline loan would be in Webster County. He then talked to Mr. David Lawson, Prosecuting Attorney of Webster County. Mr. Martin gave Mr. Lawson some statements he had taken and copies of records of the Hainlines. He accompanied Mr. Lawson to Hainlines' residence upon Mr. Lawson's initial conversation with them. Mr. Martin met Sheriff Owen August 2, 1963, at Buffalo, Missouri, and from there they went to Kansas City together. He talked to Mr. Moad in Kansas City and on the return to Marshfield. He told Mr. Sullivan of the felony complaint while in Kansas City. He furnished the names of Mr. Sullivan, Bobby Belcher, and, perhaps, Janet Boals, to Mr. Lawson as witnesses. Mr. Martin was never in the general employment of defendant finance companies. He was hired as an attorney to make certain investigations and, in his expert opinion, there were sufficient facts to cause him to conclude as an officer of the court and as a lawyer that such facts should be laid before the prosecuting attorney. He did not ask Mr. Lawson to file any charges and he was never directed by his employer to go to Mr. Lawson. At the conference in his office, Mr. Martin requested Mr. Moad to cooperate on the fidelity bond claims, saying "we * * * are not desirous to have you prosecuted. We merely want our money back." Mr. Lawson advised him of the dismissal of the felony complaint but did not mention any time in which to amend it.

Mrs. Penny Moad called Mr. Sullivan August 2, 1963, and asked Mr. Sullivan if he had had her husband arrested, to which he responded "Yes," and that he was being taken to Marshfield.

The motion to dismiss the felony complaint asserted the complaint and affidavit failed to state facts sufficient to charge an offense. The motion was argued September 19, 1963, and the magistrate court granted leave to amend to the prosecuting attorney. The complaint was not amended and, on July 28, 1964, the court sustained the motion and discharged Mr. Moad.

Appellant contends the court erred in directing a verdict in favor of defendants for the reason that plaintiff's evidence established a jury question as to the six elements necessary to the submission of a cause for malicious prosecution in that "Agency of witness Martin and his actions in assisting and encouraging prosecution * * * constitute proof of legal causation by defendants * * * [and] that plaintiff's evidence presented a jury issue on the absence of probable cause for the prosecution."

Respondents support the trial court's judgment asserting that plaintiff's evidence "failed to establish a jury issue concerning the absence of probable cause" and that plaintiff's evidence showed that the actions of the prosecuting attorney constituted the "proximate and efficient cause of plaintiff's prosecution."

Thus, of the six essentials of a malicious prosecution case, only two are in dispute on this appeal—legal causation by the present defendants and absence of probable cause; the second proposition will be considered first.

■ In determining whether proof of absence of probable cause was made by plaintiff, it is necessary to consider the manner in which the charge originated, because if the charge is initiated by indictment by a grand jury or by a prosecuting attorney on his sworn information and belief, either amounts to a prima facie showing that probable cause did exist for the prosecution. See Pinson v. Campbell, 124 Mo.App. 260, 101 S.W. 621, 624 (1907): "Malice and want of probable cause must coexist to warrant an action for malicious prosecution, and, where it is shown that the prosecutor consulted the prosecuting attorney in good faith, communicated to him all the ascertainable facts, and, acting on his advice, instituted the criminal proceeding, he should be exonerated. * * * The finding of an indictment by a grand jury, or the commitment of an examining magistrate, is prima facie evidence of probable

cause. * * * On parity of reason, the filing of an information by a prosecuting attorney on his own information and belief is prima facie evidence of probable cause, but not so when the information is predicated on the affidavit of the complaining witness."

 Plaintiff's evidence showed by court records that David Lawson, Prosecuting Attorney of Webster County, Missouri, executed the felony complaint under oath that plaintiff John Moad had made a false statement in writing respecting the financial condition of Mr. and Mrs. Hainline, and that he supported his felony complaint with his personal affidavit that its facts were true and correct according to his best information and belief. This, of course, was the institution of the charge against John Moad. Plaintiff also showed by the uncontradicted testimony of his witness, Ben Martin, that after Mr. Martin gave the information obtained through his investigations to Mr. Lawson, Mr. Lawson engaged in his own investigations before filing the charge.

The foregoing prima facie showing of the presence of probable cause as made by plaintiff stands conclusive unless overcome by evidence that false testimony was the basis of the charge and that the falsity, if so, was discoverable upon reasonable investigation. Kvasnicka v. Montgomery Ward & Co., 350 Mo. 360, 166 S.W.2d 503, 510, 515 (1942). No such rebuttal was offered by plaintiff in this case.

 Nor does any inference of want of probable cause arise from the dismissal of the complaint in the magistrate court without a preliminary examination on the merits, because acquittal and testimony by plaintiff of his innocence "do not rebut the prima facie case of probable cause he establishes by proof of his indictment and make a submissible issue on want of probable cause." Harper v. St. Joseph Lead Co., 361 Mo. 129, 233 S.W.2d 835, 840 [12, 13] (1950).

Appellant also charges error in the court's refusal "to declare witness Martin a hostile witness and on claim of surprise to permit use of deposition to show a contrary answer conflicting with testimony at trial." The brief indicates the asserted conflict to be in respect to whether Mr. Martin talked to Mr. Sullivan after talking to Mr. Yocom, and whether Mr. Martin did any research on venue or drafting the charge.

 It is not necessary to dwell on this matter on this appeal from a directed verdict. Error, if any, such as that asserted is harmless since plaintiff failed to make a case for the jury, as demonstrated, on the issue of absence of probable cause. Hoock v. S. S. Kresge Co., 230 S.W.2d 758, 761 (Mo. banc 1950); O'Dell v. Dean, 356 Mo. 861, 204 S.W.2d 248, 249 (1947).

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.