Jeff HAMILTON, Appellant,

v.

KREY PACKING COMPANY, Respondent.

No. 41410.

Missouri Court of Appeals, Eastern District, Division Three.

July 15, 1980.

Raymond Howard, St. Louis, for appellant.

Eugene K. Buckley, St. Louis, for respondent.

REINHARD, Judge.

Plaintiff appeals from the trial court's setting aside a jury verdict in his favor and entering judgment for the defendant. Plaintiff sued defendant for malicious prosecution after charges had been filed against him for stealing meat of a value of under $50.00 from the defendant. Defendant moved for a directed verdict at the end of plaintiff's case and again at the close of all the evidence. The trial court denied both motions. The jury found in favor of plaintiff and awarded him $20,000 actual damages and $30,000 punitive damages. Thereafter, defendant filed a motion for judgment in accordance with its motion for directed verdict, contending, among other things, that plaintiff failed to produce sufficient evidence to support a verdict. The trial court granted the motion and entered judgment for defendant. We affirm.

On June 11, 1975, plaintiff was employed by defendant as a loin puller at defendant's St. Louis plant. Plaintiff testified that he usually started work at 6:00 a. m. and worked eight to ten hours. He further testified that on June 11 he met Freddie Tippett, a co-employee, after work and bought two of the ribs Freddie had purchased at defendant's retail store located at the plant. Plaintiff stated that he met Freddie about 2:45 p. m. on the parking lot and paid $7.00 for the two ribs. Plaintiff put the ribs in the trunk of his car and went back into the plant to clean up before leaving work. Tippett's testimony supports plaintiff's rendition of these facts.[1]

At about 1:15 p. m. on that same day, defendant's assistant superintendent, Rob-

---

1. Plaintiff admitted that he never told the police officers or his employer that he purchased the meat from Tippett. Further, plaintiff testified that he never mentioned the purchase at an arbitration hearing involving his dismissal and at an unemployment compensation hearing.

ert Abernathy, was looking out over the employee's Florissant Avenue parking lot when he noticed plaintiff standing at the rear of plaintiff's car. The trunk to plaintiff's car was open. Abernathy testified that at that time he gave no particular thought to plaintiff's presence on the parking lot. However, at 2:45 p. m. on that same day, Abernathy received an anonymous phone call from a male who reported seeing plaintiff place meat in the trunk of a car which was parked in the Florissant Avenue parking lot. The caller described plaintiff's green Buick with a black top and recited its license plate number. Being reminded of what he had seen earlier that day, Abernathy called the police. Abernathy testified that upon the arrival of police officer Michael Washington, he told Officer Washington about the anonymous phone call and requested that the police department "take over."

When plaintiff came out of the plant to leave for the day, he was approached by Officer Washington. Officer Washington testified he told plaintiff that Abernathy had received an anonymous phone call and that the caller had stated that plaintiff had placed meat in the trunk of his car. Plaintiff testified that he denied having any stolen meat in his car and that he did not open his trunk because in it was a gun. Officer Washington stated that plaintiff denied even having an automobile in the parking lot. Plaintiff, not being put under arrest, left the parking lot and took the bus home.

Later that evening, Detective Sergeant John Billings forced open the trunk of plaintiff's car and found two ribs which bore defendant's identification number. Sergeant Billings testified that after he found the ribs in the car, Abernathy requested the arrest of plaintiff. Thereafter, Sergeant Billings put out an arrest order for plaintiff.

The following day, plaintiff received a telegram stating he was discharged. Two days following the incident, plaintiff went to the police station to redeem his automobile. The police telephoned defendant.

Abernathy and Victor Marchlewski, defendant's industrial relations manager, came to the police station and Abernathy identified plaintiff. Plaintiff testified that when Abernathy and Marchlewski arrived at the police station, "they told the police they wanted a warrant for my arrest." During his testimony, Abernathy denied ever making this request. Victor Marchlewski testified that after Abernathy made an identification of defendant, the police officers asked: "If you [Marchlewski and Abernathy] want to go to the prosecuting attorney's office, we'll accompany you over."

At the prosecuting attorney's office, a police officer made a presentation to the prosecuting attorney. Abernathy was asked questions by the prosecuting attorney. Thereafter, the prosecuting attorney told Abernathy that he was going to prosecute. Plaintiff was charged by information, sworn to by the prosecuting attorney, with "stealing under $50.00."

During the criminal case of *State v. Hamilton*, plaintiff's attorney filed a motion to suppress evidence claiming the police illegally searched plaintiff's car on June 11, 1975. The motion was sustained and the prosecuting attorney entered a *nolle prosequi* on January 26, 1976.

In plaintiff's first point on appeal, he claims the trial court erred in granting defendant's motion for a directed verdict and in entering judgment for defendant because the evidence adduced at trial, when viewed in the light most favorable to him, sufficiently established the six necessary elements of malicious prosecution.

■ In a malicious prosecution action, the plaintiff has the burden of proving the following elements: (1) commencement of prosecution of the original proceeding against the present plaintiff; (2) defendant's legal causation of the proceedings against the present plaintiff; (3) termination of the proceedings in favor of the present plaintiff; (4) absence of probable cause for such proceedings; (5) presence of malice therein; and (6) damage to plaintiff by reason thereof. *Palermo v. Cottom*, 525 S.W.2d 758, 763 (Mo.App.1975).

The briefs of both parties reveal that they only dispute the sufficiency of the evidence for three of the six elements: (1) legal causation of the underlying suit; (2) absence of probable cause; and (3) presence of malice. Because our resolution of the probable cause element will be determinative of this appeal, we shall discuss it first.

Initially, we note that in determining the submissibility of a case, we must "consider all the evidence and reasonable inferences therefrom in the light most favorable to the plaintiff." *Brown v. Meyer*, 580 S.W.2d 533, 534 (Mo.App.1979). In deciding whether plaintiff proved absence of probable cause, "it is necessary to consider the manner in which the charge originated, because if the charge is initiated by indictment by a grand jury or by a prosecuting attorney on his sworn information and belief, either amounts to a prima facie showing that probable cause did exist for the prosecution." *Moad v. Pioneer Finance Co.*, 496 S.W.2d 794, 798 (Mo.1973) *noted in* 39 Mo.L.Rev. 63 (1974). As is explained in *Pinson v. Campbell*, 124 Mo.App. 260, 101 S.W. 621 (1907):

> Malice and want of probable cause must coexist to warrant an action for malicious prosecution, and, where it is shown that the prosecutor consulted the prosecuting attorney in good faith, communicated to him all the ascertainable facts, and, acting on his advice, instituted the criminal proceeding, he should be exonerated. . . . [T]he filing of an information by a prosecuting attorney on his own information and belief is prima facie evidence of probable cause, but not so when the information is predicated on the affidavit of the complaining witness.

*Id.*, 101 S.W. at 624.

Here, plaintiff's evidence showed that an assistant prosecuting attorney executed the information under oath charging Hamilton with "stealing under $50.00" on his own information and belief. Here, there was no filing of an affidavit for warrant or complaint. The warrant was issued subsequent to the filing of the information by the assistant prosecuting attorney. The filing of the information instituted the charge against plaintiff and amounted to a prima facie showing that probable cause existed.

This prima facie showing of the presence of probable cause is conclusive unless rebutted by evidence that "false testimony was the basis of the charge and that the falsity, if so, was discoverable upon reasonable investigation." *Moad v. Pioneer Finance Co.*, 496 S.W.2d 794, 799 (Mo.1973). We find that the plaintiff offered no such rebuttal.[2]

Because plaintiff failed to make a case for the jury on the issue of absence of probable cause, we need not review the sufficiency of the evidence on the two remaining contested elements. We rule plaintiff's point against him.

Plaintiff presents two other points on appeal; however, both deal with that portion of the trial court's order which alternatively granted a motion for new trial in the event that we reversed the judgment entered in accordance with defendant's directed verdict. Because we have not reversed that order, these two remaining points have become moot.

Judgment affirmed.

DOWD, P. J., and CRIST, J., concur.

---

2. The entering of a *nolle prosequi* after a motion to suppress has been filed, is not evidence of lack of probable cause. *Harper v. St. Joseph Lead Co.*, 361 Mo. 129, 233 S.W.2d 835, 840 (1950).