Vivian STEWART, Antroin Stewart, a minor, by Vivian Stewart, his next friend, Plaintiffs–Respondents,

v.

K–MART CORPORATION, Chuck Ehert, Defendants–Appellants.

No. 52468.

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 12, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 18, 1988.

Application to Transfer Denied April 19, 1988.

Anthony F. Vaiana, St. Louis, for defendants-appellants.

Lester H. Goldman, Charles H. Huber, St. Ann, for plaintiffs-respondents.

STEPHAN, Presiding Judge.

Defendants K–Mart Corporation and its employee Chuck Ehert appeal from a judgment entered on a jury verdict awarding each of two plaintiffs actual damages in the amount of $2,500 and punitive damages in the amount of $12,500 against K–Mart and $850 against Chuck Ehert. Plaintiffs, Vivian Stewart and Antroin Stewart brought this action against K–Mart and Ehert for false arrest which occurred outside a K–Mart store in St. Louis. Defendants' post-trial motions alleging error in the trial court's refusal to give proferred affirmative defense instruction and in the giving of instructions regarding punitive damages were denied and defendants appealed. We affirm in part and reverse in part.

The following summary of facts is presented in a light most favorable to the parties prevailing below.

On September 24, 1984, plaintiffs Vivian Stewart and her son, Antroin, then 14 years old, were shopping at K–Mart for school supplies and household goods. They were in the store for about two hours and were together the entire time. Antroin picked up some school supplies and gave them to his mother. In addition, Mrs. Stewart purchased some household goods and drug items. Both plaintiffs went through the checkout line and paid for the items. The receipt was stapled to the bag.

While standing in the checkout line, both plaintiffs saw some men running from the store. After exiting the store into the mall area to go to the parking lot, plaintiffs saw several men approaching them from the parking lot. These men encircled the plaintiffs and one man, later identified as defendant Chuck Ehert, flipped out his badge and told Antroin that he thought Antroin had stolen something. Defendant then raised Antroin's tank top shirt which was

hanging loosely over his shorts. Mrs. Stewart asked what he was doing, but defendant Ehert ignored her and directed his remarks to Antroin. Mrs. Stewart then told Ehert that everything they bought was in their bag, and he put his hand into the bag, although there were differing accounts as to how this occurred.[1] Ehert then turned to Antroin and told him that if he ever returned to the store, he would be arrested.

An independent witness, Gwendolyn Jackson, testified that defendant Ehert was one of the men seen running from the store. Ms. Jackson also testified that defendant Ehert accused plaintiffs of stealing from the store and that he spoke in a "mean" and "insulting" tone of voice. After the incident all the men including Ehert returned to the store.

Plaintiffs submitted their case on MAI 23.04 (false arrest). Each plaintiff also submitted MAI 10.01 and 10.03 on the issue of punitive damages and MAI 16.01 as the definition of malice.

The court refused defendant's tender of a statutory affirmative defense instruction of a restraint made in a reasonable manner and for a reasonable length of time for the purpose of investigation because the defense was not supported by the evidence. In addition, defendants objected to the submission of MAI 10.01 and 10.03 on the grounds of insufficient evidence to submit the issue of punitive damages to the jury; the trial court overruled the objection. Defendants objected to the submission of MAI 16.01, on the ground that it improperly defined the word "malice" for use in a false arrest case.

The jury returned a verdict in favor of Vivian Stewart for $2,500 in actual damages and $850 punitive damages against defendant Ehert and $12,500 punitive damages against K–Mart. A similar verdict was returned in favor of Antroin Stewart.

Defendants raise four points on appeal: (1) the trial court erred in refusing defendants' affirmative defense instruction (MAI 32.13) because plaintiffs' evidence, and the reasonable inferences derived therefrom, raised a jury question as to whether or not defendants had probable cause to believe plaintiffs were involved in a wrongful taking; (2) the trial court erred in giving MAI 10.01 because it allowed the jury to return verdicts for punitive damages upon a mere showing that plaintiffs were restrained willfully; (3) the trial court erred in giving MAI 16.01 because punitive damages should not be permitted in a false arrest case without a showing of "actual malice" or "legal malice"; (4) the trial court erred in submitting the issue of malice to the jury because there was no evidence that defendants acted with ill will, spite, personal hatred or a vindictive motive.

The first issue on appeal is whether the trial court erred in refusing to submit defendants' tendered affirmative defense instructions. The instructions were refused on the grounds that they were unsupported by the evidence. Defendants argue on appeal that plaintiffs' evidence, and the reasonable inferences that could be derived therefrom, raised a jury question as to whether or not defendants had reasonable grounds or probable cause to believe plaintiffs were committing a wrongful taking of property, the mercantile privilege defense.

■ In their pleadings, defendants asserted both a general denial and an affirmative defense. The statute from which defendants derive their theory of affirmative defense is § 537.125 RSMo (1986). That statute provides in part:

_____

2. Any merchant, his agent or employee, who has reasonable grounds or probable cause to believe that a person has committed or is committing a wrongful taking of merchandise or money from a mercantile establishment, may detain such person in a reasonable manner and for a reasonable length of time for the purpose of investigating whether there has been a wrongful taking of such merchandise or money.

This statute affords a merchant a statutory defense. See _Bly v. Skaggs Drug Centers_,

---

**1.** Mrs. Stewart claimed that Ehert grabbed the bag and tore it open. A witness, Gwendolyn Jackson, observed that Mrs. Stewart was opening the bag for Ehert and he put his hand inside.

*Inc.,* 562 S.W.2d 723 (Mo.App.1978). The burden of proof on an affirmative defense rests with the proponent of the defense. *Town & Country Shoes Federal Credit Union v. Cramer,* 350 S.W.2d 281, 285 (Mo.App.1961). To meet its burden, a defendant may have the benefit of its own evidence or that given by plaintiff which is favorable to the defendant. *Fogarty v. J.C. Penney Company, Inc.,* 736 S.W.2d 443, 446 (Mo.App.1987). However, defendants may not have this benefit if plaintiffs' evidence is contrary to defendants' own theory of the case. *Calderone v. St. Joseph Light & Power Co.,* 557 S.W.2d 658, 664 (Mo.App.1977).

■ Defendants did not offer any evidence to support their affirmative defense instruction. In their pleadings they first asserted a general denial of the incident, and then pled the affirmative defense. Defendant Ehert effectively denied that the detention of plaintiffs occurred, testifying that he had no recollection of the incident. Since defendants deny the incident took place, they cannot consistently present the case to the jury on the theory that, if it did happen, it was done with probable cause and in a reasonable manner.

Inasmuch as defendants are attempting to use plaintiffs' evidence to support a theory inconsistent with their own theory of defense, we hold that the trial court did not err in not submitting defendants' affirmative defense instruction.

All of the rest of defendants' points on appeal relate to the contention that punitive damages were improper. We will, therefore, consider all three together.

The trial court gave instructions on both punitive damages and the definition of malice. The question for us is what degree of malice must be shown in a false arrest action. Instructions 10 and 14 were based on MAI 10.01. Instruction 10 read:

> If you find the issues in favor of Plaintiff Vivian Stewart, and if you believe the conduct of Defendant Chuck Ehert as submitted in Instruction No. 8, was *willful, wanton, or malicious,* then in addition to any damages to which you find Plaintiff Vivian Stewart entitled under

Instruction No. 9, you may award Plaintiff Vivian Stewart an additional amount as punitive damages in such sum as you will believe will serve to punish Defendant Chuck Ehert and to deter him and others from like conduct.

> If you find the issues in favor of Vivian Stewart, and if you believe the conduct of Chuck Ehert as submitted in Instruction No. 8, was *willful, wanton, or malicious,* then in addition to any damages to which you find Plaintiff Vivian Stewart entitled under Instruction No. 9, you may award Plaintiff Vivian Stewart an additional amount as punitive damages in such sum as you believe will serve to punish Defendant K–Mart and to deter it and others from like conduct.

> If punitive damages are assessed against more than one defendant, the amounts assessed against such Defendant may be the same or they may be different. (emphasis supplied)

A similar instruction, Number 14, was submitted in favor of Antroin Stewart.

In addition, Instruction No. 6 was based on MAI 16.01 and instructed the jury on the definition of malice. It read:

> The term "malicious" as used in these instructions *does not* mean hatred, spite or ill will, as commonly understood, but means the doing of a wrongful act intentionally without just cause or excuse. (emphasis supplied)

■ Punitive damages may be awarded in cases of false arrest where the defendant acts maliciously. *Wehrman v. Liberty Petroleum Co.,* 382 S.W.2d 56, 66 (Mo.App.1964). Malice, as defined in MAI 16.01 and submitted by the trial court as Instruction No. 6 is the definition of malice in law. *Sanders v. Daniel International Corp.,* 682 S.W.2d 803, 810–811 (Mo. banc 1984). In the *Sanders* decision, the Supreme Court held that MAI 16.01 contained an erroneous definition of malice, the necessary mental state, necessary in a malicious prosecution case. There must be intent to cause the harm, and "hatred, spite or ill will is necessary to establish malice in fact." *Sanders,* 682 S.W.2d at 813.

*Sanders* was decided on a theory of public policy advocating citizen assistance in

209

enforcing criminal laws. *Id.* at 816. That is, it would not be beneficial to punish someone for helping to enforce criminal laws when there is no indication of bad motive.

We hold that this reasoning is equally applicable in the false arrest situation. Citizen assistance in catching and detaining criminals should not be discouraged. Unless these citizens acted with "hatred, spite or ill will," we should not punish them for their assistance, even if wrongfully given. Therefore, the use of MAI 16.01 does not define the requisite culpable mental state warranting punitive damages in malicious prosecution *or* false arrest cases. Actual malice, as defined in *Sanders,* is required for punitive damages in a false arrest action.

█ Since the facts here do not indicate the necessary degree of malice to be present, we hold that it was error to submit the issue of punitive damages to the jury as a matter of law.

Judgment of the trial court is affirmed with respect to actual damages and reversed as to punitive damages.

DOWD and PUDLOWSKI, JJ., concur.