**Charles PERRY, Plaintiff–Appellant,**

v.

**DAYTON HUDSON CORPORATION, et al., Defendants–Respondents.**

No. 55384.

Missouri Court of Appeals, Eastern District, Division Four.

May 1, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1990.

Terry B. Crouppen, Brown & Crouppen, Michael A. Gross, St. Louis, for plaintiff-appellant.

Eugene K. Buckley, Evans & Dixon, St. Louis, for defendants-respondents.

HAMILTON, Presiding Judge.

Appellant, Charles Perry (hereinafter Perry), appeals from the order sustaining Respondents' motions for directed verdicts on his claim for punitive damages for false arrest and his claim for malicious prosecution. We affirm.

We review the evidence in the light most favorable to the plaintiff, giving him the benefit of all reasonable inferences therefrom. *Beard v. St. Mary's Health Center*, 735 S.W.2d 27 (Mo.App.1987). Perry, a black man, entered the Hampton Village Target store at 5:30 or 6:00 p.m. on September 18, 1981. The store is owned by Respondent, Dayton Hudson Corporation (hereinafter Dayton Hudson). Approximately sixty percent` of this particular store's customers are white and forty percent are black.

Perry, a college graduate and businessman, entered the store, stopping at the service desk to ask for the location of the electric razors. Carrying a razor in his hand, he walked to the counter at the rear of the store. He testified that he had purchased the razor approximately a week and a half earlier, and he wanted to exchange it for a razor with fewer features.

Perry set the razor on the counter and waited for a salesperson. He left the razor on the counter while he walked over to the next department to look for a salesperson. Finding no one to help him, he picked up the razor and walked to the check-out lines. Finding them busy, he walked out the main doorway, still carrying the razor, without going through a cash register line. Perry testified that he left without making the exchange because he had another engagement that evening.

Ten to fifteen feet outside the door, Respondent, Mark Hehner (hereinafter Hehner), a security guard for the store, stopped Perry and asked him to return to the store's security office. Perry testified that he told Hehner that he had a receipt but Hehner told him, "just come with me, don't say anything." Hehner told Perry not to move his hand when Perry tried to take the receipt from his pocket. Hehner and Marsha Etlinger, another security guard, pinned Perry's arm behind his back until they could get him to the store's security office.

Just before entering the security office, Perry again mentioned the receipt but was told to "shut up." The security guards told him to sit in a chair. Perry demanded to see the manager and got to his feet. Perry testified that Hehner then said, "I told you to sit your black ass down and shut up." Perry told Hehner he was not going to shut up or sit down anymore if he did not get the manager. Perry walked out of the office before Hehner could ask anything further about the razor. Hehner came around the desk cursing and, when Perry walked out the door, said "come back here nigger." He pursued Perry.

Marsha Etlinger grabbed Perry by the foot. Hehner also grabbed him. The three fell into a clothing display, breaking a mirror. During the scuffle, Hehner threatened Perry, choked him, and beat his head into the glass on the floor. Perry testified that during the scuffle he took the receipt from his pocket and put it in his mouth to preserve it.

Police officers were called. They took Perry to the hospital and then to jail. Perry testified he did not show the receipt because he did not trust the police. He kept the receipt in his mouth until he went to City Hospital.

An assistant circuit attorney issued an information charging Perry with the misdemeanors of stealing under one hundred fifty dollars and assault third degree. The assistant circuit attorney reviewed the police report, talked to a police officer, and interviewed Mark Hehner before issuing the information. The record discloses no indication that Hehner mentioned Perry's claim that he had a receipt. An assistant circuit attorney testified that no information would been have issued had Perry produced a receipt for the razor.

Perry was tried without a jury in Associate Circuit Court. He was found guilty of

the stealing charge but not of the assault. He successfully appealed the stealing conviction and was acquitted following a second trial. Hehner was a prosecution witness in both criminal trials.

Perry filed this action for false arrest and malicious prosecution[1] after he was exonerated of criminal charges. At trial Perry produced a torn, discolored receipt for three items. He testified the $59.99 item was the razor. The receipt did bear a September, 1981 date. At the close of the Plaintiff's evidence, the trial court granted the Defendants' motions for directed verdicts regarding the punitive damages asserted in the false arrest claim and the malicious prosecution claim in its entirety. The jury returned verdicts in favor of Perry and against Dayton Hudson and Hehner on the false arrest claim and awarded Perry $3000 in actual damages. Perry appeals the granting of the directed verdict motions.

Perry raises two points on appeal. He contends the trial court erred (1) in granting each Respondent's motion for a directed verdict as to punitive damages on the false imprisonment claim because Perry presented prima facie proof of the actual malice of each Defendant and (2) in granting each Respondent's motion for a directed verdict as to the malicious prosecution claim because Perry presented prima facie proof of each of the six elements of malicious prosecution.

■ In *Sanders v. Daniel International Corp.*, 682 S.W.2d 803 (Mo. banc 1984), the Supreme Court held that actual malice is required for punitive damages in a malicious prosecution case. *Id.* at 815. The *Sanders* court defined actual malice as "ill will, or spite, or grudge, either toward the injured person individually, or toward all

persons in one or more groups or categories of which the injured person is a member." *Id.* at 815–16, *quoting* E. Devitt & C. Blackmar, 3 Federal Practice and Instructions § 85.11, at 121 (3rd ed. 1977). The same standard was held applicable to punitive damages in false arrest cases in *Stewart v. K–Mart Corp.*, 747 S.W.2d 205, 209 (Mo.App.1988).[2] Both *Sanders* and *Stewart* emphasized the public policy of advocating citizen assistance in enforcing the laws. Therefore, citizens who do attempt to aid law enforcement, even if wrongfully, should not be punished unless they acted with a wrong motive. *Id.*

■ Here, Perry's own testimony establishes that Hehner could have observed him pick up an electric razor of the type sold in the store and leave the store without passing through a cash register line. Nor is Hehner's conduct unreasonable in refusing to discuss the receipt on the parking lot or in the store where other customers would observe them. Moreover, the language and actions from which malice might be inferred occurred only after Perry resisted the arrest by refusing to sit and by leaving the security office. None of the evidence establishes an evil motive, ill will, grudge, or spite on the part of Hehner at the time of the restraint. Perry's first point is, therefore, denied.

■ Second, Perry contends he presented prima facie proof of the six elements of malicious prosecution. Those six elements are (1) the commencement of a prosecution against the Plaintiff; (2) the instigation by the Defendant; (3) the termination of the proceeding in favor of the Plaintiff; (4) the want of probable cause for the prosecution; (5) activation of the Defendant's conduct by malice; and (6) damage to the Plaintiff. *Sanders*, 682

---

**1.** Perry dismissed Count II Assault at trial, leaving only his claims for false arrest and malicious prosecution.

**2.** In *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989), the Supreme Court again stated that the existing instructions did not clearly articulate the circumstances justifying punitive

damages for an intentional tort. The new instruction, adopted by the *Burnett* court, does not use the term "malice." Instead, the instruction is written in terms of conduct "outrageous because of defendant's evil motive or reckless indifference to the rights of others." *Id.*

S.W.2d at 807. All six of these elements must be proved and a failure to prove any one means Plaintiff has failed to make a submissible case of malicious prosecution. Because malicious prosecution actions have not been favored by the law, courts require strict proof of each element. *Id.* at 806.

In their motions for directed verdicts, Dayton Hudson and Hehner challenged the adequacy of Perry's evidence regarding the elements of instigation, probable cause, and malice.

■ The probable cause for initiating a prosecution is defined in *Palermo v. Cottom,* 525 S.W.2d 758, 764 (Mo.App.1975), as "reasonable grounds for suspicion, supported by circumstances in evidence sufficiently strong to warrant a cautious man in his belief that the person accused is guilty of the offense charged." The phrase "reasonable grounds" means "that under the circumstances an ordinarily careful and prudent person after having made a reasonable inquiry would have believed the facts alleged and that the judicial proceeding was valid." MAI (3rd) 16.06 [1980 New]. Further, the facts must be considered as the prosecuting party could have reasonably believed them to be under the circumstances at the time. *Palermo,* 525 S.W.2d at 764. If a charge is initiated by indictment by a grand jury or by a prosecuting attorney on his sworn information and belief, either amounts to a prima facie showing that probable cause did exist for the prosecution. *Moad v. Pioneer Finance Co.,* 496 S.W.2d 794, 798 (Mo.1973); *Hamilton v. Krey Packing Co.,* 602 S.W.2d 879, 882 (Mo.App.1980). The prima facie showing is conclusive unless rebutted by evidence that false testimony was the basis of the charge and the falsity was discoverable upon reasonable investigation. *Moad,* 496 S.W.2d at 799; *Lipari v. Volume Shoe Corp,* 664 S.W.2d 953, 954 (Mo.App.1983); *Hamilton,* 602 S.W.2d at 882. Where a prima facie showing of probable cause exists, the fact that Plaintiff was acquitted creates no genuine issue of fact on that issue. *Baker v. St. Joe Minerals Corp.,* 744 S.W.2d 887, 889 (Mo.App.1988).

■ Perry contends he rebutted the presumption because the record supports the inference that Hehner provided false information to the assistant circuit attorney. He contends he would not have been prosecuted if a receipt had been produced and if Hehner had advised the assistant circuit attorney of his claim that he had a receipt. At no point did Perry actually show Hehner the receipt. His own testimony reveals that he produced no receipt for the security guards, the police, or anyone except his own attorney prior to the criminal trials. Instead of producing the receipt when he got to the security office, Perry's non-cooperation and attempted flight tended to reinforce Hehner's belief that Perry was stealing the razor. By resisting the arrest and secreting the receipt in his mouth, he made a reasonable investigation virtually impossible. Perry has presented no evidence to rebut the presumption of probable cause created by the filing of an information by the prosecutor.

Because this Court finds probable cause for the prosecution, we need not discuss instigation and malice. Perry's second point is denied.

Judgment affirmed.

CARL R. GAERTNER and STEPHAN, JJ., concur.