Aurora I. ANTON, Appellant,

v.

The POLICE RETIREMENT SYSTEM OF ST. LOUIS, et al., Respondents.

Nos. 67706, 67709.

Missouri Court of Appeals, Eastern District, Division Two.

April 23, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 4, 1996.

Application to Transfer Denied Aug. 20, 1996.

Stephen H. Gilmore, Raymond F. Buckley Jr., St. Louis, for appellant.

Henry D. Menghini, St. Louis, for respondents.

CRAHAN, Presiding Judge.

Aurora Anton ("Plaintiff") appeals following summary judgment in favor of defendants, the Police Retirement System of St. Louis and individual trustees thereof (collectively, "PRS"), on her claims alleging malicious prosecution, dismissal of her claim for abuse of process and, in a separate action, summary judgment on her claim alleging violation of her civil rights under 42 U.S.C. § 1983. The appeals have been consolidated. The central issue, common to both appeals, is a question of first impression: whether a grand jury indictment, leveling criminal charges that were later dismissed pursuant to a plea agreement with Plaintiff's co-defendant husband, provides probable cause for a subsequent civil action based upon the same core factual allegations contained in the criminal indictment. We hold that undisputed evidence that a civil action was commenced based on factual matters set forth in a criminal indictment is sufficient to establish a rebuttable presumption of probable cause. Further, in the absence of any rebuttal evidence raising a genuine issue of material fact that the indictment was based on false testimony or that the prosecutors did not believe the facts alleged therein, the presumption of probable cause raised by reliance on the facts alleged in the prior criminal indictment is sufficient to support summary judgment for the defendant in an action for malicious prosecution. We affirm the judgments of the trial court.

We find no dispute as to the material facts. The genesis of this action lies in a kickback scheme that began in 1982 orchestrated by Plaintiff's husband, Donald Anton. The scheme involved the placement of brokerage business for PRS funds with a particular brokerage. A portion of the commissions on this brokerage business was then funneled

back to Donald Anton through payments to two corporations he controlled, Dicon and Dotto.

In March, 1986 the Board of Trustees of PRS filed suit in federal court against one of its money managers, Midwest Investment Advisory Services, Inc. In June, 1987 PRS filed a separate suit, later consolidated with the first, against the same defendant and additional defendants consisting of additional money managers and brokers, as well as Plaintiff's husband, Donald Anton.

In October, 1987 seven individuals were indicted by a federal grand jury in connection with the kickback scheme, including Donald Anton and Plaintiff. Five of the defendants, including Donald Anton, pled guilty. Charges against Plaintiff were severed, and ultimately dismissed, as part of the plea bargain with Donald Anton. The remaining Defendant, Anthony Daniele, was convicted by a jury.[1]

The federal indictment against Plaintiff charged that Plaintiff, in combination with other defendants, devised a scheme and artifice to defraud and obtain money and property from the City and the Police Pension Fund (administered by PRS) by churning accounts, making and/or receiving kickback payments and/or benefits and charging excessive commissions. It further charged that Plaintiff, who was responsible for much of the bookkeeping, paperwork and banking transactions for Donald Anton's corporations, used false names to sign checks disbursing payments in furtherance of the scheme. Plaintiff was also charged with altering invoices for fictitious and spurious investment services, which invoices had been subpoenaed by a federal grand jury, as part of the scheme and in an effort to cover up the scheme. The indictment charged that Plaintiff personally benefitted directly and indirectly from the scheme, made use of the United States mails in furtherance of the scheme, conspired with other defendants, conspired to commit extortion and knowingly, willfully and unlawfully obstructed, attempted to obstruct, affect and delay interstate

commerce. Based on these factual charges, the indictment charged Plaintiff with sixteen counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342, conspiracy in violation of 18 U.S.C. § 371, and four counts of obstructing, affecting or delaying interstate commerce by actual or attempted extortion in violation of 18 U.S.C. §§ 1951 and 1952.

On May 19, 1988, attorneys for the Board took Plaintiff's deposition but were unable to obtain any information due to Plaintiff's repeated assertion of her Fifth Amendment privilege against self-incrimination. That same day, the Board's attorneys met with the Board in closed session concerning the pending civil actions described above. Based on the indictments, the attorneys' review of the evidence concerning Plaintiff with the government, Plaintiff's deposition and the attorneys' review of the applicable law, counsel advised the Board that it had valid claims against Plaintiff (and others) for violations of the Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., the Securities Exchange Act of 1934, fraud, breach of fiduciary duty, breach of contract and civil conspiracy. The Board unanimously authorized the addition of Plaintiff and others as additional defendants in the pending federal civil action.

On May 24, 1988, PRS filed a motion for leave to amend its petition and add additional defendants, including Plaintiff, in the federal civil suit.

On May 25, 1988, Plaintiff's husband, Donald Anton, entered a plea of guilty to charges of conspiracy to commit mail fraud, obstruction of commerce by extortion and obstruction of justice. The terms of Donald Anton's plea agreement included dismissal of all pending criminal charges against Plaintiff coincident with the sentencing of Donald Anton.

On August 31, 1988, the district court sustained PRS's motion to amend its complaint and add parties defendant (including Plaintiff) in the civil suit.

---

1. A more detailed explanation of the kickback scheme is set forth in *United States v. Daniele,* 886 F.2d 1046 (8th Cir.1989). *See also, United*

*States v. Daniele,* 931 F.2d 486 (8th Cir.1991); *Police Retirement System v. Midwest Inv.,* 940 F.2d 351 (8th Cir.1991).

On September 2, 1988, co-defendant Donald Anton was sentenced in accordance with his plea agreement. Pursuant to the aforementioned plea bargain, all criminal charges against Plaintiff were dismissed with prejudice.

On September 7, 1988, PRS filed its First Amended Complaint in the pending consolidated civil action, adding Plaintiff Aurora Anton as a party defendant. The amended complaint alleged and described in detail the same scheme, by means of excessive brokerage commissions and kickbacks to defraud the PRS, as alleged in the indictment. Plaintiff was alleged to have been responsible for much of the paperwork, bookkeeping and banking transactions for Dicon and Dotto, corporations which were allegedly the alter ego of Plaintiff's husband, co-defendant and co-conspirator, Donald Anton. Plaintiff was alleged to have signed kickback checks using the same false names alleged in the indictment and to have endorsed all checks to Dicon from one of the participating brokerages between October 1983 and April 1986. Plaintiff was further alleged to have acted with others to devise a pattern of fraudulent schemes to defraud PRS in order to procure money and benefits for themselves through churning, kickbacks and charging excessive fees and commissions by use of the U.S. mails and interstate wire and telephone communications. Such conduct formed the basis for each separate count of the First Amended Complaint on the theories of RICO violations, securities violations, fraud, breach of fiduciary duty, breach of contract and civil conspiracy.

At the time PRS took Plaintiff's deposition discussed above, her criminal counsel agreed to accept service of any amended civil complaint in her behalf. Thus, PRS served its First Amended Complaint on Plaintiff's counsel and not personally on Plaintiff. Thereafter, Plaintiff discharged her criminal counsel and obtained new counsel who, on the eve of trial, moved for dismissal based on insufficient service of process. On June 6, 1989, the day trial began, Plaintiff was dismissed from the federal civil suit without prejudice. PRS proceeded to trial against the remaining defendants. PRS thereafter made no effort to accomplish service on Plaintiff following her dismissal without prejudice from the federal civil suit.

Plaintiff later filed the instant actions alleging in the first action malicious prosecution and abuse of process in adding her as a defendant in the federal civil suit and, in the separate action, violation of her civil rights based on the alleged malicious prosecution and abuse of process. After both petitions were amended, PRS filed motions to dismiss and for summary judgment supported by copies of the grand jury indictment, affidavits, minutes of the PRS trustees' meeting of May 19, 1988 and copies of various pleadings and excerpts from the transcript in the federal criminal and civil suits. Plaintiff responded to each motion attaching her own affidavits and additional pleadings, minutes and excerpts from the transcripts in the federal actions.

By agreement of the parties the pending motions in both actions were heard and submitted together. The trial court held that PRS was entitled to summary judgment on Plaintiff's malicious prosecution claims. Plaintiff's abuse of process claim was dismissed for failure to state a claim for which relief can be granted. The trial court also entered summary judgment in Plaintiff's separate action for violation of her civil rights. Plaintiff separately appealed these judgments and we consolidated the appeals.

 Plaintiff's first point attacks the propriety of summary judgment on her malicious prosecution claims. The criteria on appeal from a summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion for summary judgment initially. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support that judgment. *Id.* at 378. Where the movant is a "defending party," the movant may establish a right to judgment by showing (1) facts which negate *any one* of the claimant's element facts, (2) that the non-movant, after an adequate period of discovery has not been

able to produce evidence sufficient to allow the finder of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly pleaded affirmative defense. *Id.* at 381.

■ The elements Plaintiff must prove to establish her claim of malicious prosecution are: (1) commencement of an earlier suit against Plaintiff; (2) instigation of the suit by defendant; (3) termination of the suit in Plaintiff's favor; (4) lack of probable cause for the suit; and (5) damage to Plaintiff resulting from the suit. *State ex rel. Police Retirement System of St. Louis v. Mummert,* 875 S.W.2d 553, 555 (Mo. banc 1994). In this case the trial court found that PRS had negated the "lack of probable cause" element because it was uncontested that PRS relied on the federal grand jury indictment of Plaintiff when it added her as a party to the federal civil suit. Further, the trial court found that Plaintiff had neither alleged nor offered any evidence that the indictment was based on false testimony or that any falsity was discoverable by PRS through reasonable investigation.

■ Where there is no dispute about the facts of a claim for malicious prosecution, the existence of probable cause is a question of law for the court, not a question of fact. *Id.* In holding that Plaintiff's indictment by a grand jury negated the "lack of probable cause" elements of her claim, the trial court relied principally on *Perry v. Dayton Hudson Corp.,* 789 S.W.2d 837 (Mo.App.1990) and *State ex rel. Police Retirement System, supra.* In *Perry,* the issue was whether a party indicted by a grand jury but later acquitted of the charge had established the required element of lack of probable cause in a malicious prosecution action against the parties who had accused him of the crime. The court held, 789 S.W.2d at 841:

> If a charge is initiated by indictment by a grand jury ... [this] amounts to a prima facie showing that probable cause did exist for the prosecution. *Moad v. Pioneer Finance Co.,* 496 S.W.2d 794, 798 (Mo.1973); *Hamilton v. Krey Packing Co.,* 602 S.W.2d 879, 882 (Mo.App.1980). The prima facie

showing is conclusive unless rebutted by evidence that false testimony was the basis of the charge and the falsity was discoverable upon reasonable investigation. *Moad,* 496 S.W.2d at 799; *Lipari v. Volume Shoe Corp.,* 664 S.W.2d 953, 954 (Mo.App.1983); *Hamilton,* 602 S.W.2d at 882.

■ As Plaintiff points out, *Perry* addressed the issue of whether a grand jury indictment established probable cause for a criminal prosecution, not a civil suit based on the facts alleged in the indictment. In *State ex rel. Police Retirement System,* however, the Missouri Supreme Court held that where the factual basis for criminal and civil charges is the same, the presumption traditionally applied to establish probable cause for a criminal prosecution should also be applied to a malicious prosecution based on a civil suit. 875 S.W.2d at 555.

*State ex rel. Police Retirement System* arose out of the same federal indictments which led to this case. One of those indicted with Plaintiff, Anthony Daniele, was later convicted by a jury of all charges brought against him. Daniele was also named as a defendant in the federal civil suit from which Plaintiff was ultimately dismissed without prejudice. The jury in the federal civil suit returned a verdict for Daniele. *See Police Retirement System v. Midwest Investment Advisory Service, Inc.,* 940 F.2d 351, 353 (8th Cir.1991). Daniele then filed suit against PRS claiming that the trustee's action in bringing the federal civil suit against him constituted malicious prosecution. PRS moved for summary judgment, which was denied. PRS then sought a writ of prohibition, which was ultimately granted and made absolute by the Missouri Supreme Court. Citing *Perry* and *Wilcox v. Gilmore,* 320 Mo. 980, 8 S.W.2d 961, 963 (1928), the court held that Daniele's criminal conviction gave rise to the same rebuttable presumption of probable cause for PRS's civil suit as it traditionally would have for a criminal prosecution. 875 S.W.2d at 555. This presumption was further held to shift the burden to Daniele to show a genuine issue of material fact that the conviction was obtained by fraud or false testimony or that the prosecution did not believe the facts alleged in support of the

prosecution. *Id.* at 556. Upon proof of the criminal conviction raising the presumption of probable cause, Daniele could no longer meet his burden by "slight proof" of lack of probable cause. *Id.* Because Daniele neither alleged nor offered any evidence raising a genuine issue of fact as to fraud in procuring the conviction, PRS was held to be entitled to summary judgment.

■ We recognize that *State ex rel. Police Retirement System* involved a criminal conviction on the charges which gave rise to the civil action, not a grand jury indictment upon which no conviction was ever obtained. As *Perry* and the line of cases cited therein establish, however, the presumption of probable cause applied in malicious prosecution actions based on the prosecution of a criminal case has never been limited to situations which resulted in a criminal conviction. Indeed, if a conviction is obtained, there is generally no cause of action for malicious prosecution of the criminal case because an essential element of the tort is that the case alleged to have been wrongfully prosecuted be terminated in the plaintiff's favor. As *Perry* illustrates, the presumption of probable cause is most commonly invoked as a defense when the plaintiff was ultimately acquitted of the charge. In that situation, Missouri courts have consistently held that a grand jury indictment amounts to a prima facie showing that probable cause existed for the prosecution and that this presumption is conclusive unless rebutted by evidence that false testimony was the basis of the charge and that the falsity was discoverable upon reasonable investigation. *Perry,* 789 S.W.2d at 841; *Hardge–Harris v. Pleban,* 741 F.Supp. 764, 775 (E.D.Mo.1990).

■ Extending the presumption of probable cause to the institution of civil proceedings is fully consistent with the underlying rationale which justifies the tort of malicious prosecution in the first place. The tort exists to vindicate the plaintiff's right not to be haled into court to answer for her conduct absent probable cause to believe that a valid

claim exists. This is precisely the function of a grand jury in determining whether to hand down an indictment. *See United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974) (Grand jury's responsibilities include both the determination of whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions). MAI 16.06 defines reasonable grounds for a civil action to mean that "under the circumstances an ordinarily careful and prudent person after having made a reasonable inquiry would have believed the facts alleged and that the judicial proceeding was valid." A grand jury indictment by definition represents an independent determination by a group of citizens sworn to uphold the law that the facts alleged in the indictment exist. Extending the presumption of probable cause to the institution of a civil action based on those facts merely acknowledges that, as a matter of law, ordinarily careful and prudent persons are entitled to rely on the grand jury's investigation and finding of the facts alleged in the indictment. When those facts supply the elements of a civil action for damages, the requirement of the law that there be probable cause for institution of the suit has been satisfied. Where, as here, the suit is instituted by the victim of the crime charged by the grand jury, allowing the victim to commence a civil action based on the facts charged in the indictment is particularly justified. Without the subpoena power of the grand jury, the victim may not be in a position to ferret out the proof necessary to establish the facts until discovery. The grand jury indictment thus serves as an independent basis for a reasonable belief that such evidence can be obtained through discovery. To require a conviction as the threshold of probable cause would essentially require the victim to satisfy the requirements for estoppel, not probable cause. The law does not require that degree of certainty as a prerequisite for filing suit.[2]

---

**2.** We likewise reject Plaintiff's assertion that the indictment was inadmissible because it was hearsay. The indictment is an out of court statement but it is not hearsay because it was not offered to

prove the truth of the matters asserted therein. Rather, the indictment is admissible to establish PRS's probable cause for filing suit. It is irrele-

Plaintiff urges, however, that even if an indictment could serve as a basis for probable cause, PRS is not entitled to such a presumption in this case because the charges against her were dismissed before PRS formally filed its First Amended Complaint naming her as a party to the suit. We disagree. The general rule is that no inference of want of probable cause arises from the dismissal of a criminal complaint without a trial on the merits. *Harper v. St. Joseph Lead Co.*, 233 S.W.2d 835, 840 (Mo.App.1950). Moreover, the transcript of Donald Anton's plea hearing and the judgment and sentence of the federal district court establish that the dismissal of the charges against Plaintiff was the result of a plea bargain for her husband's guilty plea. Thus, dismissal of the criminal charges against Plaintiff does not support an inference that the charges were based on false testimony or were not believed by the prosecutors, which Plaintiff had the burden to prove to avoid summary judgment.

Finally, Plaintiff urges that PRS was not entitled to summary judgment because the elements of the criminal charges were not the same as the elements of the causes of action pled by PRS. This is irrelevant. The issue is whether the facts alleged in the indictment are the same as the facts alleged in the petition. In *State ex rel. Police Retirement System*, the crimes for which Daniele was convicted were the same as those with which Plaintiff was charged and the civil action likewise asserted theories of recovery identical to those asserted in this case. 875 S.W.2d at 554. The Missouri Supreme Court held that PRS was entitled to the presumption of probable cause based on a comparison of the *factual allegations* of the indictment and the petition, not the elements of the crimes and civil theories of recovery. *Id.* at 555–56. As demonstrated by our description of the indictment and the petition set forth above, there is no material difference in the factual allegations. Thus, PRS was entitled to invoke the presumption of probable cause. Because Plaintiff failed to offer any evidence suggesting that the indictment was based on false testimony or that the prosecutors did not believe the facts alleged, PRS was enti-

tled to summary judgment on Plaintiff's malicious prosecution claims.

In her second point, Plaintiff asserts that the trial court erred in dismissing her claim for abuse of process because "it is against the weight of the law, contrary to the petition and contrary to M.R.CV.P. 55.27(a)." This point preserves nothing for review because it does not state "wherein and why" Plaintiff claims the ruling is error. Rule 84.04(d); *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978). In the exercise of our discretion we have reviewed this point for plain error pursuant to Rule 84.13(c). We find no error. A detailed discussion of this point would have no precedential value. We affirm the trial court's ruling on this count pursuant to Rule 84.16(b).

Plaintiff's third point asserts that the trial court's entry of summary judgment on her civil rights claim filed pursuant to 42 U.S.C. § 1983 based on its rulings in the separate action for malicious prosecution was error "because it is contrary to the facts, pleadings and the law." This point likewise preserves nothing for review. It is also contrary to the record. The trial court's judgment recites that there was an agreement between the court and the parties that the motions presented relative to the first cause would be dispositive of the second. Although Plaintiff now claims that this was not the parties' agreement, she has apparently made no effort to have the record corrected in the trial court and the finding of the court stands unrefuted. Further, the judgment in favor of PRS on Plaintiff's malicious prosecution and abuse of process claims does compel judgment for PRS on Plaintiff's civil rights claim based on the same predicate torts. *McMaster v. Cabinet for Human Resources*, 824 F.2d 518, 520 (6th Cir.1987).

In her final point, which also does not comply with Rule 84.04(d), Plaintiff posits error in the trial court's failure to rule on every ground for relief and every motion asserted by PRS. The trial court's entry of summary judgment and dismissal finally disposed of each of Plaintiff's claims. This ren-

vant whether the facts asserted in the indictment

could ultimately have been proven to be true.

dered moot PRS's motions seeking the same relief on different theories and the court did not err in declining to rule on them. Point denied.

For the foregoing reasons, we affirm the judgments of the trial court.

CRANDALL and DOWD, JJ., concur.